UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VAL a/k/a VLADIMIR SKLAROV, ATG TRUST COMPANY as Successor Trustee to the Northern Trust Company as Trustee under Trust Agreement dated February 15, 2001 and Known as Trust Number 9810, <br><br> Plaintiffs, <br><br> v. <br><br> BMO HARRIS, N.A., as Successor in Interest to Amcore Bank, N.A., BANK OF MONTREAL, and FEDERAL DEPOSIT INSURANCE CORPORATION, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> No. 15 C 2991 <br><br> Judge Rebecca R. Pallmeyer |

### ORDER

Plaintiffs Vladimir and Sharon Sklarov and a trust they controlled owed millions of dollars to Defendant BMO Harris, N.A. In another federal court, and in two state court foreclosure proceedings, the Sklarovs attempted to assert a frivolous claim for relief from an alleged conspiracy to manipulate interest rates. Undeterred by rulings in those other courts, Plaintiffs filed this case, but failed to obtain proper service. Defendants provided the appropriate Rule 11 warnings and now seek sanctions for Plaintiffs' pursuit of a frivolous claim barred by the doctrine of *res judicata*. The motion [25] is granted.

### STATEMENT

Vladimir and Sharon Sklarov and a trust they controlled borrowed millions of dollars from Amcore Bank, N.A. The loans were secured by properties in Cook and DuPage Counties, Illinois, and earned interest at the London Interbank Offered Rate ("LIBOR"). The Sklarovs defaulted on the loans and BMO Harris, Inc., successor to Amcore, filed foreclosure actions in state courts. In March 2014, while those foreclosure actions were pending, the Federal Deposit Insurance Corporation, which had been appointed as receiver of Amcore, sued several other

banks (not including Amcore or BMO) in the Southern District of New York, alleging that those other banks had conspired to suppress LIBOR rates. The Sklarovs sought to intervene in that New York lawsuit, but Judge Buchwald of the Southern District of New York concluded that as borrowers, the Sklarovs could not have been harmed by an alleged conspiracy to keep interest rates low. For the same reason, the Circuit Court of DuPage County refused to allow the Sklarovs to raise the alleged conspiracy as a counterclaim in the foreclosure action against them. The Sklarovs made yet another attempt to invoke the alleged LIBOR manipulation as a sword against BMO, in Cook County. That attempt, too, failed, when the Circuit Court of Cook County dismissed the claims with prejudice.

Assuming that a conspiracy to lower interest rates could have had some harmful effect on them, the Sklarovs' logical next step from these setbacks should have been an appeal to the Illinois Appellate court. They did not take that step, however. Instead, six months after the Circuit Court of Cook County dismissed their claims, Plaintiffs filed this action, alleging the same claims they had filed in Cook County and adding a purported claim under the Sherman Act, the basis for this court's jurisdiction. BMO sounded the warning bell by serving a Rule 11 motion on Plaintiffs' attorneys, the same ones who represented them in both Illinois state court actions and the New York federal court. Plaintiffs' counsel brushed the warning aside and filed a new complaint, identical to the earlier one, except that Sharon Sklarov is no longer a named Plaintiff.

Plaintiffs' counsel made no legitimate effort to initiate service of process. Counsel did not seek issuance of a summons by the Clerk, but instead sent a purported summons form to BMO—a form not signed by the Clerk, not bearing the court's seal, and listing an incorrect return date. BMO promptly moved to dismiss the lawsuit, noting the absence of service, the obvious *res judicata* bar, and Plaintiffs' failure to allege any element of a claim under § 1 of the Sherman Act. BMO's attorneys noticed their motion for hearing on October, but Plaintiffs' counsel failed to appear. The court set a briefing schedule and a ruling date. Plaintiffs' counsel did submit a response to the motion, in which they argued that service was proper and that their

allegations were adequate to state a claim. The response brief says nothing at all about how a conspiracy alleged by the FDIC and by Plaintiffs themselves to *suppress* interest rates could possibly have harmed borrowers. Nor do Plaintiffs address their failure to allege any involvement on the part of BMO itself (or the Bank of Montreal, also named as a Defendant in this case) in any rate manipulation. In response to the *res judicata* concern, Plaintiffs asserted that the state court's denial of their motion to bring a counterclaim on the interest rate issue is not preclusive—an argument that ignores case law cited by Plaintiffs themselves, confirming that the doctrine *of res judicata* bars "not only claims actually decided in an earlier action but also claims that could have been asserted in the earlier action." *Cabrera v. First National Bank of Wheaton*, 324 Ill. App.3d 85, 93-94, 753 N.E.2d 1138, 1146 (2nd Dist. 2001). As Defendants noted in reply, the state law claims not only could have been, but actually were presented as proposed counterclaims in the Circuit Court of Cook County.

Plaintiffs did not show up on the date set for ruling on Defendants' motion to dismiss, and the court granted it. In a short docket entry, the court memorialized its ruling:

> As Defendants have observed, Plaintiff has not properly served process, and its complaint appears to be barred by *res judicata*. Plaintiff itself acknowledges attempting to bring its claim in state court. The proper remedy for the state court's dismissal of Plaintiff's claims is appeal, not a new action. Plaintiff has alleged no facts sufficient to establish that it was harmed by a decrease in the LIBOR interest rate, nor do allegations that Defendants were "not unaware" of alleged collusion concerning such rates state a Sherman Act violation. Plaintiff's vague references, in its response brief, to "newly discovered information" do not substitute for allegations that raise its claim for relief beyond a speculative level. Complaint is dismissed without prejudice. Plaintiff is granted leave to file an amended complaint within thirty (30) days, but is warned that a complaint so obviously deficient as this one may warrant an award of sanctions.

(Minute Entry, Docket Entry 24.)

Plaintiffs declined to file an amended complaint, and Defendant urges that the record supports an award of sanctions for the one they did file. BMO invokes Federal Rule of Civil Procedure 11(b), which holds an attorney who signs a pleading to an appropriate standard: signing a pleading constitutes certification that the attorney has conducted a reasonable inquiry

3

to determine that the pleading is nonfrivolous, warranted under the law, and supported by the facts. The court will award sanctions under Rule 11 when the pleadings are overtly frivolous, or when an attorney should have known that the pleading was baseless and failed to conduct a proper investigation. *City of Livonia Empl. Ret. Sys. v. Boeing Co.*, 711 F.3d 762 (7th Cir. 2013). This determination is "within the sound judgment of the district court." *Cooney v. Casady*, 735 F.3d 514, 523 (7th Cir. 2013); *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1025 (7th Cir. 1999).

This court agrees with Defendant BMO that the complaint in this case was baseless. First, claims against BMO that arise out of the indebtedness underlying the state court foreclosure action are barred. *Res judicata* "bars claims based on facts that would have constituted a counterclaim or defense in the earlier proceeding where successful prosecution of the later action would either nullify the earlier judgment or impair the rights established in the earlier action." *Cabrera*, 324 Ill. App. 3d at 93-94, 754 N.E.2d at 1146. In the state court foreclosure proceedings, Plaintiffs challenged the interest rate claimed by the lender, arguing that the rate was manipulated (albeit by banks other than BMO). Any claims related to that alleged manipulation are barred, as are any other defenses to the foreclosure judgment as well as state law claims that could have been, but were not, asserted in the state court actions. Indeed, as BMO points out, the complaint filed in this case is very similar to the complaint dismissed with prejudice by the Circuit Court of Cook County. BMO asserts, without contradiction, that Plaintiffs' attorneys were present in court in DuPage County when that court denied Plaintiffs' effort to file a counterclaim related to the alleged manipulation of LIBOR on the basis that forbearance agreements that Plaintiffs had entered into prior to the filing of the foreclosure action barred assertion of any such claim.

Plaintiffs' effort to repackage the LIBOR challenge as a Sherman Act claim has even less to recommend it. The Sherman Act prohibits an agreement or conspiracy "in restraint of trade or commerce," 15 U.S.C. § 1. To state a claim under that Act, a plaintiff must allege "(1) a

4

contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in [a] relevant market; and (3) an accompanying injury" to the plaintiff himself and to the market. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012) (quoting *Denny's Marina, Inc. v. Renfro Prods., Inc.*, 8 F.3d 1217, 1220 (7th Cir.1993)). Plaintiff has suggested vaguely that "newly discovered information regarding the full scope [sic] unlawful manipulation of the LIBOR rate is still coming to light" (Response to Motion to Dismiss [22] at 10), and has alleged in the Amended Complaint that Defendant BMO Harris "had actual or constructive knowledge" that LIBOR "was unlawfully manipulated." (Amended Complaint [9] at ¶ 20.) Those allegations are plainly insufficient. Plaintiff has not bothered to identify any of the entities allegedly involved in "unlawful manipulation" of LIBOR, but they acknowledge that those entities do not include Defendant BMO—that is, BMO is not a participant in the alleged agreement to restrain trade. Nor have they offered any basis for finding that Plaintiffs were harmed by the alleged manipulation—a flaw identified by every court to consider Plaintiffs' situation. The response to Defendants' motion to dismiss asserts that "numerous" unidentified "governmental bodies have prosecuted individuals" (again, unidentified) "based on both suppression and inflation of the LIBOR rate." (Response [22] at 10.) The court declines to consider factual assertions made in response to a motion to dismiss if those assertions conflict with the allegations of the complaint. *See Bryant v. Gardner*, 545 F. Supp. 2d 791, 801 n.2 (N.D. Ill. 2008) citing *Albiero v. Kankakee*, 233 F.3d 417, 419 (7th Cir. 1997)). The complaint itself only alleged, consistent with the FDIC's pursuit of this issue, that the LIBOR rate was improperly suppressed. Even if Plaintiffs had alleged that Defendant BMO were somehow involved in this suppression, Plaintiffs, who were borrowers, could not claim injury as a result.

Plaintiffs' response to the request for sanctions is unsatisfying. They characterize Defendants' motion as "a retaliatory filing," and contend they were "denied due process in the underlying proceeding by not being able to assert their counterclaim based on newly continued discovered evidence . . . ." (Response to Rule 11 Motion [28], at 2.) The state court's refusal to

permit filing of a counterclaim that it deemed inadequate is not, of course, a denial of due process; and if that refusal was error, Plaintiffs were free to seek review by way of an appeal. Moreover, what "newly continued discovered evidence" Plaintiffs have in mind remains unexplained. In any event, if Plaintiffs had no information supporting their claims at the time they filed this lawsuit, they violated Rule 11 by doing so. And if "newly continued discovered evidence" is available now, the court would expect Plaintiffs to have accepted its invitation that they file an amended complaint.

In addition to tacitly acknowledging that they lacked a factual basis for their complaint when it was filed, Plaintiffs have effectively conceded that they have alleged no harm resulting from any conduct on the part of Defendant BMO: "We continued to accept that damages were uncertain at best but the fact that the Defendant's Contract specifically states that any interest rate that is found to be fraudulent within the Contract would be settled in a different manor [sic]." (*Id.* at 3.) What manner of settlement Plaintiffs believe is called for by this provision is, again, a mystery. Plaintiffs also rehash their challenge to the doctrine of *res judicata* and argue that the complaint was sufficient, but those arguments are the same ones the court previously considered and rejected.

Defendants in this case complied with the requirements of Rule 11: they made their request for sanctions in a separate motion and gave Plaintiffs a twenty-one day "safe harbor" in which to withdraw their complaint. *See Corley v. Rosewood Care Ctr., Inc.,* 142 F.3d 1041, 1058 (7th Cir. 1998). Plaintiffs' claims that interest rate manipulation harmed them were frivolous, and they have not even alleged that Defendants participated in the alleged anticompetitive agreement. More than one court had rejected these claims before this lawsuit was filed. Such circumstances satisfy the court that the complaint violated Rule 11. *See Whole Woman's Health v. Hellerstedt*, 136 S.Ct. 2292, 2332 (2016) (noting the propriety of Rule 11 sanctions where *res judicata* clearly bars a suit).

6

In addition to attorney's fees, courts may impose sanctions in the form of a penalty paid directly to the court. FED. R. CIV. P. 11(c)(4); *see also Divane*, 319 F.3d at 314. "[S]uch fines are designed to compensate the court for wasted judicial resources as well as to provide additional deterrence against the frivolous filing." *Diversified Techs. Corp. v. Jerome Techs.*, 118 F.R.D. 445, 452 n.10 (N.D. Ill. 1988). Plaintiffs' meritless complaint in this case has consumed scarce judicial resources, and a fine might well be warranted. The court nevertheless declines to impose a fine, as it is confident that an award of attorneys' fees pursuant to this Rule will be sufficient to "deter repetition of the conduct or comparable conduct by others similarly situated." FED. R. CIV. P. 11(c)(4). The court also need not address Defendants' alternative argument that a sanction is recoverable under 28 U.S.C. § 1927.

## **CONCLUSION**

Defendants' motion for sanctions [25] is granted. Defendants are directed to file their petition for fees pursuant to LR 54.3.

ENTER:

Dated: September 1, 2016

_____
REBECCA R. PALLMEYER
United States District Judge