| | | |
|---|---|---|
| VAL a/k/a VLADIMIR SKLAROV, ATG TRUST COMPANY AS SUCCESSOR TRUSTEE TO NORTHERN TRUST COMPANY AS TRUSTEE UNDER TRUST AGREEMENT DATED FEBRUARY 15, 2001 AND KNOWN AS TRUST NUMBER 9810, | ) ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  15 C 2991 |
| | ) | |
| BMO HARRIS, N.A., AS SUCCESSOR IN INTEREST TO  AMCORE BANK, N.A., BANK OF MONTREAL, AND FEDERAL DEPOSIT INSURANCE CORPORATION, | ) ) ) ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Vladimir and Sharon Sklarov sued the holder of their mortgage, BMO Harris Bank, N.A. ("BMO"), alleging that BMO's involvement in the manipulation of the LIBOR rate violated the Sherman Antitrust Act and violated the Sklarovs' rights under state law.  The Sklarovs had attempted to assert identical theories in another federal court case and two state proceedings, all of which had been rejected or dismissed.  Sklarov raised the issue yet again in this case, but failed to obtain proper service on BMO.  After dismissing the amended complaint, the court granted BMO's motion for sanctions for the fees and costs incurred in defending this action.  BMO's petition is now before the court.  BMO requests a total of $55,918.50 in attorneys' fees and expenses in the amount of $694.75.  For the reasons below, the court awards costs in the amount requested but reduces BMO's fee award to $50,257.50.

## BACKGROUND

The facts of this case, presented in detail in the court's previous opinion granting the motion for sanctions (Order (Sept. 1, 2016) [31]), are briefly summarized here.  Sklarov was, at one time, the beneficiary of a trust which owned a multi-unit commercial property in Bensenville,

Illinois.  (Am. Compl. [9], at ¶¶ 1–3.)[1]  The trust owned the property subject to a mortgage held

by Amcore Bank.  (Am. Compl. ¶ 4.)  BMO Harris Bank, N.A. eventually acquired the mortgage

after Amcore failed in 2010.  (*See id.*; *see also* Federal Deposit Ins. Co., *Failed Bank

Information: Information for Amcore Bank, Nat'l Ass'n, Rockford, IL*, FDIC.GOV,

https://www.fdic.gov/bank/individual/failed/amcore.html (last visited September 21, 2017).)

The interest rate on the promissory note is tied to the "LIBOR" rate.  (Am. Compl. ¶ 8.)

LIBOR—short for the "London Interbank Offered Rate"—is the rate at which major London-

based banks expect to pay to borrow money at a given time, and, more importantly, is "a

benchmark for short term interest rates in the global money market."  (Am. Compl. ¶ 12.)

According to Sklarov's complaint, many banks use LIBOR to set rates on various types of loans,

including Sklarov's promissory note, which, the court infers, had a variable rate.  (Am. Compl. ¶¶

12–13.)

In September 2007, news broke that certain major banks—not including BMO—were

artificially suppressing the LIBOR rate, keeping it lower than the market would support in order

to benefit their portfolios.  (Am. Compl. ¶¶ 16–20.)  Sklarov alleges that BMO, as a major

financial institution, knew that the LIBOR rate was being manipulated after the media began

reporting and investigating the story.  (Am. Compl. ¶ 20.)  Nevertheless, BMO continued to

charge Sklarov a variable rate based on LIBOR.  (Am. Compl. ¶¶ 8–10.)  Eventually, Sklarov fell

behind on payments and BMO filed an action for foreclosure on the Bensenville property in July

2012.  (Am. Compl. ¶¶ 7.)  When BMO moved for summary judgment in the foreclosure action,

Sklarov attempted to raise arguments related to the LIBOR manipulation, but the state court

---

[1]     Plaintiff's complaint restarts the numbering of paragraphs in the "Background" section, which itself begins on page 4 of the amended complaint.  The cited paragraph numbers come from the background section.   Because Sharon Sklarov was removed as a plaintiff from the suit with the filing of the amended complaint (see Am. Compl. [9]), the court here refers only to Vladimir Sklarov.

granted BMO's motion and denied Sklarov's request for leave to file a counterclaim. (*See* Am. Compl. ¶¶ 8–16.)

There were a number of defects with Sklarov's theory. The primary issue, of course, is that Sklarov paid *less* on the loan as a result of the banks' suppression of the LIBOR rate, and thus, he was not injured and had no claim based on the manipulation of LIBOR. That is what Judge Gibson of the Circuit Court of DuPage County found, when Sklarov raised this claim as a defense in the foreclosure action, *see* Report of Proc's at 7–8, *BMO Harris v. Vladimir Sklarov*, No. 12 CH 3822 (Ill. Cir. Ct. May 13, 2014), Ex. 4 to Defs.' Mot. to Dismiss [14-4], at 7–8, and what Judge Buchwald of the Southern District of New York found, when she denied the Sklarov's petition to intervene in the FDIC's case against several of the culpable banks, *see In re LIBOR-Based Fin. Instruments Litig.*, Nos. 11 MD 2262 & 14 Civ. 1757, 2014 WL 6603417 (S.D.N.Y. Nov. 14, 2014). Finally, Sklarov attempted to invoke the alleged LIBOR manipulation against BMO in a state court complaint in Cook County. This action, too, was unsuccessful; the court granted BMO's motion to dismiss the complaint with prejudice. *Sklarov v. BMO Harris Bank, N.A.*, Nos. 13 CH 959 & 13 CH 9378 (Ill. Cir. Ct. Oct. 23, 2014), Ex. 8 to Defs.' Mot. to Dismiss [14-8]. Sklarov did not appeal. Instead, he filed this action against BMO in this court in April 2015 with the trustee of the trust that held the property, ATG Trust Company, and Sharon Sklarov, another trust beneficiary, as co-plaintiffs. In this action, Sklarov named as defendants BMO, the Bank of Montreal—the parent company of BMO's sole shareholder—and the Federal Deposit Insurance Corporation ("FDIC") as defendants, alleging violations of the Sherman Antitrust Act, fraud, and several contract claims. (*See generally* Am. Compl.)

BMO (and the Bank of Montreal, jointly represented and referred to solely as "BMO") moved to dismiss the action against it in this court, as well. The court promptly granted the motion. (Minute Order (Nov. 19, 2015) [24].) Sklarov not only had failed to allege an injury, but his claim was barred by *res judicata*, and there was a procedural defect: Sklarov had made no legitimate attempt to serve BMO. (*Id.*) Instead, he had sent BMO a purported "summons form"

not signed by the clerk, without the court's seal, and listing an incorrect return date. (Order (Sept. 1, 2016), at 2.) Sklarov's counsel failed to appear at the presentment date for the motion to dismiss or at the hearing, and, though his attorneys did file a response to BMO's motion, the response failed to engage with Sklarov's lack of an injury or meaningfully respond to the *res judicata* issue. (*Id.* at 2–3.)

After the court granted the motion to dismiss, BMO moved for sanctions under Rule 11. (*See* Mot. for Sanctions [25].) The court granted this motion as well. (Order (Sept. 1, 2016).) BMO had warned Sklarov—and his counsel—by serving an unfiled Rule 11 motion on Sklarov's counsel (the same attorneys who represented him in both the Illinois state court action and the New York attempted intervention) after he filed his initial complaint. (*Id.* at 2.) Nevertheless, Sklarov not only failed to take advantage of Rule 11's 21-day "safe harbor" to withdraw his allegations, but further pursued the action by filing an amended complaint. *See Corley v. Rosewood Care Ctr.*, 142 F.3d 1041, 1058 (7th Cir. 1998). The amended complaint had no merit for the reasons explained above, and, after a full round of briefing, the court granted BMO's motion and directed BMO to petition for fees pursuant to Local Rule 54.3. (*See* Order (Sept. 1, 2016).)

BMO has requested the following fees that it paid its attorneys for work prior to the filing of the fee petition, less what BMO refers to as a "courtesy" credit that the law firm, Reed Smith, LLP, deducted from the charges:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Diane Green-Kelly | 6.4 | $770.00 | $4,928.00[2] |
| John A. Cullis | 22.2 | $550.00 | $12,210.00 |
| Leonard E. Hudson | 58.1 | $500.00 | $29,050.00 |
| Aleksandra Chernin (Librarian) | .2 | $245.00 | $49.00 |
| Mark A. Fishback (Docket Clerk) | .3 | $205.00 | $61.50 |
| **Subtotal** | | | $49,298.50 |

---

[2] The Joint Statement totals Ms. Green-Kelly's pre-petition time as $4,949.00, but that appears to be a mathematical error.

| | | | |
|---|---|---|---|
| **"Courtesy" Deduction** | | | ($2,281.00) |
| **Total** | | | $44,017.50 |

(Joint Statement Regarding Atty's Fees [32], at ¶1; Decl. of John Cullis [35], at 2 n.1.) BMO

requests $659.35 in various costs as well. (Joint Statement at ¶ 2.) Finally, BMO requests fees

associated with preparing the fee petition as follows:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Diane Green-Kelly | .5 | $800.00 | $400.00 |
| John A. Cullis | 3.6 | $550.00 | $1,980.00 |
| Leonard E. Hudson | 5.7 | $500.00 | $2,850.00 |
| Rosede A. Olson (Paralegal) | 19.00 | $350.00 | $6,650.00 |
| **Total** | | | $11,880.00 |

## DISCUSSION

Rule 11 of the Federal Rules of Civil Procedure establishes a baseline standard of

conduct for attorneys involved in any case in federal court. *See* FED. R. CIV. P. 11. Under Rule

11, a party that brings a frivolous claim may be required to pay the attorneys' fees that the

opposing party incurred in defending that claim. *See* FED. R. CIV. P. 11(c)(4); *Wade v. Soo Line

R.R. Corp.*, 500 F.3d 559, 562 (7th Cir. 2007). A party may recover only those attorneys' fees

that directly flow from the sanctionable conduct. *Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020,

1030–31 (7th Cir. 1999); *Wade*, 500 F.3d at 563. BMO here seeks fees incurred in defending

the motion to dismiss, the motion for sanctions, and preparing the fee petition, all of which

followed directly from fending off Sklarov's complaint. Sklarov does not argue otherwise.

Sklarov does, however, argue that the hourly rates sought and the hours expended by

defense counsel in performing those tasks are excessive. A court must, in awarding sanctions,

consider both (1) whether the rate requested by a prevailing party is reasonable, and (2)

whether a reasonable amount of time was expended on the tasks to be compensated. *Szopa v.

United States*, 460 F.3d 884, 886 (7th Cir. 2006); *Budget Rent-A-Car Sys., Inc. v. Consolidated

Equity LLC*, 428 F.3d 717, 718 (7th Cir. 2005). The party seeking the fee must establish the

reasonableness of the requested award. *See Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir.

2014) (allocating burden of proof to prevailing party in 42 U.S.C. § 1988 cases). The court finds that BMO has carried its burden to demonstrate that the rates charged and the hours expended were reasonable, and Sklarov has produced no contradictory evidence.

## I.  Rate Charged

A rate is reasonable if it is consistent with the market rate for comparable legal work performed in the local legal market. *Montanez*, 755 F.3d at 543. The Seventh Circuit has consistently held that "the best evidence of whether attorney's fees are reasonable is whether a party has paid them." *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008). John Cullis, the Reed Smith partner who "manag[ed] the client relationship for this matter," attested based on his personal knowledge that BMO had paid the requested rates. (Decl. of John Cullis [35], at ¶ 12.) Furthermore, each attorney represented that the rates charged were consistent with those of other attorneys in the Chicago area. (Decl. of Diane Green-Kelly [34], at ¶ 10; Cullis Decl. ¶ 7; Decl. of Leonard Hudson [36], at ¶ 7.) The court finds this unsurprising; BMO, a large institutional client, presumably commands leverage with its lawyers to achieve a fair market rate.

Sklarov contends that this evidence is insufficient to meet BMO's burden to establish that defense counsel charged reasonable market rates. The cases that Sklarov relies on, however, deal with the unique task of setting a market rate in § 1988 civil rights cases. In one case cited by Sklarov, the Supreme Court noted that determining the rates charged by attorneys hired in the fee-for-service private market is a straightforward exercise because those rates are "discussed with the client, may be negotiated, and it is the client who pays whether he wins or loses." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). In the context of civil rights fee-shifting, in contrast, the "fee determination is made by the court in an entirely different setting: there is no negotiation or even discussion with the prevailing client, as the fee—found to be reasonable by the court—is paid by the losing party." *Id.* Sklarov cites to several cases where the court relied on third-party affidavits of other attorneys in the legal community to establish a

prevailing market rate, but each of those concerned setting rates in civil rights cases, where no negotiated rate was charged to—or paid by—the client. *See Glover v. Johnson*, 934 F.2d 703, 705, 715 (6th Cir. 1991) (prisoner rights litigation compensated under 42 U.S.C. § 1988); *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (in public housing tenants rights litigation, observing that establishing market rate in civil rights context requires "more than the affidavit of the attorney performing the work").

The final case cited by Sklarov, *Columbus Mills, Inc. v. Freeland*, throws no real shade on the claims made by BMO's counsel. In *Columbus Mills,* the Eleventh Circuit affirmed an award of fees to a corporation for defense of a vexatious shareholder suit under Georgia law. 918 F.2d 1575, 1577 (11th Cir. 1990). The court also affirmed the district court's finding that the fee rate charged to and paid by the corporation was reasonable. *Id.* at 1580. True, the court observed that the Eleventh Circuit generally requires "more than an affidavit from the attorney performing the work" to establish a reasonable fee rate, but gave the matter only glancing attention, noting merely that defendant corporation had "produced another affidavit which established that the rates were reasonable." *Id.* The court instead focused on the fact that, as in this case, the corporation paid its attorneys' fees throughout the litigation. *Id.* The court observed that "evidence of a fee structure arrived at by private parties negotiating at arms length is highly persuasive," and affirmed the rates charged and paid by the client. *Id.* Whatever the vitality of the "more than an affidavit" rule in the Eleventh Circuit where a client has paid the fee in question, it has no purchase in the Seventh: as this Circuit has noted, a client's willingness to pay a rate is not "'*evidence*' about market value; it *is* market value." *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996). BMO has carried its burden to prove that the rate requested is reasonable, as evidenced by the attorneys' affidavits and by the fact that BMO paid them.

Indeed, Sklarov himself initially found no cause to object to these rates; in his Local Rule 54.3 submission, Sklarov did not contest defense counsel's rates, and those rates have not

changed in the petition before the court.  (Joint Statement ¶ 2.)  Only now, in response to the petition, does Sklarov contend that BMO's evidence of reasonable market rate is insufficient.  If Sklarov's objection to the hourly rates is not waived by his failure to address it in the Rule 54.3 process, the court now overrules it.

## II.     Hours Expended

A court awarding attorneys' fees as a sanction must ensure that the time devoted to the litigation was reasonable.  *Szopa*, 460 F.3d at 886.  "In determining the reasonable number of hours, the court should exclude hours that are 'excessive, redundant or otherwise unnecessary,'" *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)), and a court may expect a petitioner for fees to have exercised good "billing judgment" in eliminating duplicative hours from a request, *Hensley*, 461 U.S. at 434.

Sklarov contends that the time spent by BMO's counsel on the pre-petition aspects of the case, 87.2 hours in total, is excessive.  He broadly asserts that (1) the case was not "overly complicated," (2) the case was resolved relatively quickly without discovery, and (3) the use of multiple attorneys was "unnecessary and redundant."  (Pl.'s Resp. Br. [40], at 3.)  Sklarov also objects to the 28.8 hours spent in preparing the fee petition, which he characterizes as punitive. (*Id.*)  Though BMO provided detailed billing records, identifying each attorney's time spent on the case (*see* Reed Smith LLP Invoices, Group Ex. 1 to Mot. for Att'y Fees [33-1] (invoices sent to BMO broken into .1 hour increments); *see also* Reed Smith LLP Invoices, Group Ex. B to Mot. for Att'y Fees [33-2] (same)), Sklarov has not pointed to any specific time entries as objectionable.

The court finds 87.2 hours a significant but ultimately reasonable amount of time to spend on defense of this case.  Defense counsel were obliged to research the case history (which required examination of the three other court actions filed by Sklarov), prepare a Rule 11 sanctions letter, file opening and reply briefs in support of a motion to dismiss, and fully brief a

motion for sanctions as well. Though the case terminated short of discovery, the matter was pending for a year and a half and required two motions to fully dispose of it. The court sees no unreasonable expenditures in the detailed invoices submitted to BMO during that time. (*See* Reed Smith LLP Invoices, Group Ex. 1.)

Sklarov's objection to the use of multiple attorneys is baseless. It is common and appropriate for law firms to allocate work among less experienced—and lower cost—lawyers and more experienced supervisors; indeed, the court suspects that failure to do so could itself be grounds for finding a request unreasonable. *Cf. Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 553 (7th Cir. 1999) (disallowing time where firm had not properly allocated work between paralegals and clerks). The substantial majority of the casework was performed by the least expensive attorney on the matter, Mr. Hudson, while the attorney with the highest hourly rate, Ms. Green-Kelly, devoted just six and a half hours to supervisory oversight. (*See* Joint Statement ¶ 1.) The court does not find the number of attorneys involved objectionable.

Sklarov similarly raises few substantive objections to the time expended on the fee petition. Though he attached an affidavit from an experienced paralegal, Cate Saville, concerning the appropriate amount of time to spend on fee petitions, Sklarov did not discuss or even mention the affidavit in his brief. The court has nevertheless examined the affidavit. Saville states that she has more than twenty years of experience as a paralegal and has drafted at least fifty fee petitions. (Aff. of Cate Saville, Ex. 1 to Pl.'s Resp. Br. [40-1], at ¶¶ 2–3.) The preparation of a fee petition has never taken Saville more than 1.5 hours to complete. (*Id.* ¶ 4.) BMO's three attorneys and paralegal spent a total of 28.8 hours preparing the Local Rule 54.3 joint submission, communicating with opposing counsel, and drafting the petition. (*See* Cullis Aff. ¶ 11.)

The court does not agree that fee petitions should never require more than an hour and a half of time to prepare, but concludes that the nearly 30 hours dedicated to this petition is more time than reasonably should have been expended. Particularly, the paralegal who

9

completed most of the work on the petition, Rosede A. Olson, spent 19 hours assembling timesheets, drafting affidavits, locating "back-up" for costs, and preparing the Local Rule 54.3 statement. (*See generally* Fee Petition Invoices.) This was no doubt a significant undertaking, but not one that should have absorbed more than two full workdays, particularly where the firm had already submitted invoices to BMO for these fees and costs. (*See* Cullis Aff. ¶ 12.) For this litigation, the court finds that time in excess of ten hours on these tasks was unreasonable.

Attorney oversight was necessary in preparing the petition, as well. In this case, all three attorneys worked on the fee petition and together spent 9.8 hours overseeing this project. Involvement of the three attorneys in this case may have resulted in duplicative time; for example, several conferences between Cullis and Hudson likely could have been avoided for this relatively straightforward task. (*E.g.*, ReedSmith Invoice # 2869555 (Nov. 9, 2016) [33-2 at p. 7], at 1.) Even if supervision of this task required the involvement of all three attorneys, the court believes the task could have been completed in no more than five hours. Ms. Green-Kelly devoted only half an hour to the petition, and this is a reasonable amount of time to provide ultimate guidance on tasks related to the petition. Accordingly, the court will proportionally reduce Mr. Cullis's hours by 1.8 and Mr. Hudson's hours by 3.0. Mr. Cullis will be compensated for 1.8 hours, Mr. Hudson for 2.7 hours, and Ms. Green-Kelly for .5 hours.

## III.     Costs

BMO requests $659.35 in costs, as well. Sklarov did not object to these costs in the Joint Statement, nor does he identify any objections in his brief. The court will award those costs.

**CONCLUSION**

BMO's petition for attorneys' fees [33] is granted. Fees are awarded in the amount of $50,257.50 and costs in the amount of $659.35. Sklarov's attorneys are jointly and severally liable for payment of these fees. *See* FED. R. CIV. P. 11 advisory committee's notes to 1983 amendment ("If the duty imposed by the rule is violated, the court should have the discretion to

impose sanctions on either the attorney, the party the signing attorney represents, or both . . . .")

Pre-petition fees are calculated as follows:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Diane Green-Kelly | 6.4 | $770.00 | $4,928.00[3] |
| John A. Cullis | 22.2 | $550.00 | $12,210.00 |
| Leonard E. Hudson | 58.1 | $500.00 | $29,050.00 |
| Aleksandra Chernin (Librarian) | .2 | $245.00 | $49.00 |
| Mark A. Fishback (Docket Clerk) | .3 | $205.00 | $61.50 |
| **Subtotal** | | | $49,298.50 |
| **"Courtesy" Deduction** | | | ($2,281.00) |
| **Total** | | | $44,017.50 |

Fees incurred in preparing the petition are calculated as follows:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Diane Green-Kelly | .5 | $800.00 | $400.00 |
| John A. Cullis | 1.8 | $550.00 | $990.00 |
| Leonard E. Hudson | 2.7 | $500.00 | $1,350.00 |
| Rosede A. Olson (Paralegal) | 10.00 | $350.00 | $3,500.00 |
| **Total** | | | $6,240.00 |

ENTER:

Dated:  September 26, 2017

REBECCA R. PALLMEYER
United States District Judge

---

[3]     The Joint Statement totals Ms. Green-Kelly's pre-petition time as $4,949.00, though these are the hours and rate noted there.  This appears to be in error, the amount above is correct.